1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

PORTIA MCCOLLUM, Derivatively on Behalf of Nominal Defendant STARBUCKS CORPORATION,

        Plaintiff,

    v.

LAXMAN NARASIMHAN, RICHARD E. ALLISON, JR., ANDREW CAMPION, BETH FORD, MELLODY HOBSON, JORGEN VIG KNUDSTORP, NEAL MOHAN, DANIEL SERVITJE, MIKE SIEVERT, WEI ZHANG, SATYA NADELLA, and RACHEL RUGGERI

        Defendants,

    and

STARBUCKS CORPORATION,

        Nominal Defendant.

No.  2:24-cv-1979

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

**DEMAND FOR JURY TRIAL**

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 1

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Portia McCollum ("Plaintiff"), by and through her undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant Starbucks Corporation ("Starbucks" or the "Company"), against current and former members of the Company's board of directors (the "Board") and certain of its executive officers seeking to remedy the Individual Defendants' (defined below) breach of fiduciary duties and violations of federal law.  Plaintiff alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' publicly available documents, filings with the United States Securities and Exchange Commission ("SEC"), press releases published by and regarding Starbucks, legal filings, news reports, securities analysts' reports about the Company, the securities class action *Garbaccio v. Starbucks Corp., et al.,* Case No. 2:24-cv-01362-JHC (W.D. Wash.) (the "Securities Class Action"), and other publicly available information.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought by Plaintiff on behalf of Starbucks against certain of its officers and current and former members of the Company's Board for breaches of their fiduciary duties between at least November 2, 2023 and April 30, 2024, inclusive (the "Relevant Period"), and the federal securities laws, as set forth below.

2.      Starbucks is a global coffeehouse chain based in Seattle, Washington.

3.      Prior to the Relevant Period, Starbucks launched an initiative, referred to as its Reinvention plan, to elevate the Company's brand globally, accelerate long-term growth, and enhance operating efficiencies

4.      Throughout the Relevant Period, the Individual Defendants issued statements that were materially false and misleading and omitted to state material adverse facts necessary to make the statements not misleading because they failed to disclose that: (i) Company management lacked reliable information regarding revenue and growth projections; (ii) the Individual

**BADGLEY MULLINS TURNER** PLLC
19910 50th Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

Defendants were understating risks related to seasonality in foreign markets, particularly in China; (iii) the Reinvention plan failed to account for macro uncertainty and competition, especially in the Chinese market; (iv) as a result, the Reinvention plan failed to meet the Company's stated measures; and (v) as a result of the foregoing, positive statements regarding the Company's business, operations, and prospects were materially false and misleading and lacked a reasonable basis at all relevant times.

5.    The truth emerged on April 30, 2024, when Starbucks announced disappointing financial results for its second fiscal quarter of 2024 and lowered its full-year 2024 fiscal guidance.

6.    During an earnings call, hosted by Starbucks on the same day, the Company attributed the disappointing results in part to macro conditions and "fierce competition among value players in the [Chinese] market."

7.    On this news, the price of Starbucks stock declined more than 15% in one day, from a closing price of $88.49 per share on April 30, 2024 to a closing price of $74.44 per share on May 1, 2024.

8.    As a result of the foregoing, the Securities Class Action was filed against the Company and certain of its executive officers, exposing the Company to massive class-wide liability and costs related to defending itself in the Securities Class Action.

9.    Moreover, in light of the breaches of fiduciary duty by the Individual Defendants, most of whom are the Company's current directors, the substantial likelihood of the directors' liability in this derivative action and the Securities Class Action, and that the Individual Defendants are beholden to each other based on their longstanding business and personal relationships, the Individual Defendants do not possess the requisite level of disinterestedness and independence to consider a demand to commence litigation against themselves and the other Individual Defendants on behalf of the Company. Accordingly, Plaintiff did not make a demand on the Board because, as further detailed herein, demand would be a futile and useless act.

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 3

**BADGLEY MULLINS TURNER** PLLC
19910 50th Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") over the claims asserted herein for violations of Section 14(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and Rule 14a-9 (17 C.F.R.§240.14a-9) and Section 10(b) of the Exchange Act and Rule 10b-5 (17 C.F.R.§240.10b-5) promulgated thereunder by the SEC.

11.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

12.     This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

13.     In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

14.     Venue is proper in this District pursuant to Section 27(a) of the Exchange Act and 28 U.S.C. § 1391 because Starbucks is headquartered in this District, Defendants have conducted business in this District, and a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

*Plaintiff*

15.     Plaintiff is, and has been at all relevant times, a shareholder of Starbucks.

*Nominal Defendant*

16.     Nominal Defendant Starbucks is incorporated under the laws of Washington with its principal executive offices located at 2401 Utah Avenue South, Seattle, Washington 98134. Starbucks' common stock is traded on the NASDAQ Stock Market ("NASDAQ") under the ticker symbol "SBUX."

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 4

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

*Individual Defendants*

17.     Defendant Laxman Narasimhan ("Narasimhan") served as the Company's Chief Executive Officer ("CEO") and as a member of the Board from March 2023 until August 2024. According to the Company's public filings, Defendant Narasimhan received $14,604,531 during fiscal year 2023[1] in compensation from the Company. As of January 5, 2024, Defendant Narasimhan beneficially owned 39,678 shares of Starbucks common stock, worth roughly $3.68 million.[2] Defendant Narasimhan is named as a defendant in the Securities Class Action.

18.     Defendant Richard E. Allison, Jr. ("Allison") has served as a member of the Board since September 2019 and serves as a member of the Audit and Compliance Committee (the "Audit Committee"). According to the Company's public filings, Defendant Allison received $329,904 during fiscal year 2023 in compensation from the Company. As of January 5, 2024, Defendant Allison beneficially owned 27,440 shares of Starbucks common stock, worth $2.5 million.

19.     Defendant Andrew Campion ("Campion") has served as a member of the Board since September 2019 and serves as Chair of the Audit Committee. According to the Company's public filings, Defendant Campion received $339,943 during fiscal year 2023 in compensation from the Company. As of January 5, 2024, Defendant Campion beneficially owned 17,543 shares of Starbucks common stock, worth $1.6 million.

20.     Defendant Beth Ford ("Ford") has served as a member of the Board since January 2023. According to the Company's public filings, Defendant Ford received $309,925 during fiscal year 2023 in compensation from the Company. As of January 5, 2024, Defendant Ford beneficially owned 3,202 shares of Starbucks common stock, worth $297,754.

21.     Defendant Mellody Hobson ("Hobson") has served as a member of the Board

---

[1] Fiscal year 2023 refers to the fiscal year ended October 1, 2023.

[2] Valuations of the Individual Defendants' personal holdings of Company stock are based on the $92.99 per share closing price of Starbucks common stock on January 5, 2024.

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 5

**BADGLEY MULLINS TURNER** PLLC
19910 50th Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

since January 2005. According to the Company's public filings, Defendant Hobson received $494,954 during fiscal year 2023 in compensation from the Company. As of January 5, 2024, Defendant Hobson beneficially owned 722,928 shares of Starbucks common stock, worth $67.2 million.

22.    Defendant Jorgen Vig Knudstorp ("Knudstorp") has served as a member of the Board since 2017 and serves as a member of the Audit Committee. According to the Company's public filings, Defendant Knudstorp received $329,904 during fiscal year 2023 in compensation from the Company. As of January 5, 2024, Defendant Knudstorp beneficially owned 81,232 shares of Starbucks common stock, worth $7.5 million.

23.    Defendant Neal Mohan ("Mohan") has served as a member of the Board since January 2024.

24.    Defendant Daniel Servitje ("Servitje") has served as a member of the Board since January 2024.

25.    Defendant Mike Sievert ("Sievert") has served as a member of the Board since January 2024.

26.    Defendant Wei Zhang ("Zhang") has served as a member of the Board since October 2023 and serves as a member of the Audit Committee. According to the Company's public filings, Defendant Zhang received $164,286 during fiscal year 2023 in compensation from the Company. As of January 5, 2024, Defendant Zhang beneficially owned 1,810 shares of Starbucks common stock, worth $168,312.

27.    Defendant Satya Nadella ("Nadella") served as a member of the Board from 2017 until May 30, 2024. According to the Company's public filings, Defendant Nadella received $309,925 during fiscal year 2023 in compensation from the Company. As of January 5, 2024, Defendant Nadella beneficially owned 31,083 shares of Starbucks common stock, worth $2.8 million.

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

*Officer Defendant*

28.     Defendant Rachel Ruggeri ("Ruggeri") has served as the Company's Chief Financial Officer ("CFO") and Executive Vice President ("EVP") since February 2021. According to the Company's public filings, Defendant Ruggeri received $6,750,140 during fiscal year 2023 in compensation from the Company. As of January 5, 2024, Defendant Ruggeri beneficially owned 44,138 shares of Starbucks common stock, worth $4.1 million. Defendant Ruggeri is named as a defendant in the Securities Class Action.

## **FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS**

29.     By reason of their positions as officers and/or directors of Starbucks, and because of their ability to control the business and corporate affairs of Starbucks, the Individual Defendants owed Starbucks and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Starbucks in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Starbucks and its shareholders so as to benefit all shareholders equally.

30.     Each director and officer of the Company owes to Starbucks and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

31.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Starbucks, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

32.     To discharge their duties, the officers and directors of Starbucks were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

33.     Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 7

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Starbucks, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

34.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NASDAQ, the Individual Defendants had a duty: to ensure that Starbucks implemented and properly monitored the Company's internal controls over financial reporting; to prevent the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations; and to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

35.     To discharge their duties, the officers and directors of Starbucks were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Starbucks were required to, among other things:

> (a) ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Washington and the United States, and pursuant to Starbucks' own Standards of Business Conduct (the "Code of Conduct");

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Ave. W., Suite 103
Lynnwood, WA 98036
**TEL** 206.621.6566
**FAX** 206.621.9686

(b) conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c) remain informed as to how Starbucks conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d) establish and maintain systematic and accurate records and reports of the business and internal affairs of Starbucks and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e) maintain, implement, and monitor an adequate and functioning system of internal legal, financial, and management controls, such that Starbucks' publicly disclosed financial information would be accurate;

(f) exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g) refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h) examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

36.     Each of the Individual Defendants further owed to Starbucks and the shareholders

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Ave. W., Suite 103
Lynnwood, WA 98036
**TEL** 206.621.6566
**FAX** 206.621.9686

the duty of loyalty requiring that each favor Starbucks' interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

37.     At all times relevant hereto, the Individual Defendants were the agents of each other and of Starbucks and were at all times acting within the course and scope of such agency.

38.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Starbucks.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

39.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

40.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment.

41.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company, purposefully, recklessly, or negligently, to conceal material facts, fail to correct such misrepresentations, and violate applicable laws.

42.     In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants, who are directors of Starbucks, was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

**BADGLEY MULLINS TURNER** PLLC
19910 50th Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

43.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

44.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Starbucks and at all times acted within the course and scope of such agency.

## STARBUCKS' CODE OF CONDUCT

45.     Starbucks' Code of Conduct begins with a commitment to "the highest standards of ethical conduct and behavior."

46.     The Code of Conduct applies to "all partners, officers, and board of directors, as well as temporary service workers and independent contractors" of Starbucks, and violations of the Code of Conduct will lead to "disciplinary action up to, and including, dismissal."

47.     In a section titled "Compliance with Laws and Regulations," the Code of Conduct states:

> Starbucks is committed to full compliance with the laws, rules and regulations of the countries in which it operates. You must comply with all applicable laws, rules and regulations when performing your duties. When you think a conflict exists between the Standards and an applicable law, rule or regulation, or if you have a question concerning the legality of your or other partners' conduct, you should consult with your manager or Ethics & Compliance.

48.     In a subsection titled "Conflicts of Interest," the Code of Conduct states the following, in pertinent part:

> We all have a duty to avoid situations that create a conflict of interest. A conflict of interest can occur when you or a family member have a personal interest, activity, or relationship that could interfere or appear to interfere with your ability to make objective business decisions in the best interest of Starbucks.

49.     In a subsection titled "Fraudulent Activity," the Code of Conduct states, in

**BADGLEY MULLINS TURNER** PLLC
19910 50th Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

pertinent part, that:

> Starbucks partners are expected to assess and implement anti-fraud processes and controls, safeguard our assets, be honest and trustworthy in their business dealings and disclosures, comply with applicable laws and regulations and report any known or suspected internal or external misconduct.

50.    In a subsection titled "Books and Records," the Code of Conduct states, in pertinent part, that "all partners must ensure the accuracy and integrity of Starbucks corporate records. This includes reliability and accuracy of books and records, as well as full, fair, accurate, timely and understandable public disclosure."

### STARBUCKS' AUDIT COMMITTEE CHARTER

51.    Pursuant to Starbucks' Audit Committee Charter, the Audit Committee is responsible "for overseeing the accounting and financial reporting processes of Starbucks Corporation (the 'Company') and the internal and external audit processes."

52.    The Audit Committee Charter further states that the purpose of the Audit Committee is to assist the Board in "fulfilling its oversight responsibilities by reviewing the financial information that will be provided to shareholders and others, the systems of internal control that management and the Board have established, the Company's risk management practices, and compliance with the Company's Standards of Business Conduct."

53.    In a section titled "Responsibilities," the Audit Committee Charter states that the Audit Committee shall "[s]elect, appoint, determine funding and other retention terms for, oversee, and, if the Committee determines necessary or appropriate, replace, the independent auditors."

54.    The Audit Committee Charter further tasks the Audit Committee with the following:

> Review the Company's quarterly and annual financial results with management and the independent auditors. This review includes:
> - The financial statements and related disclosures to be included in the Company's Annual Report to Shareholders, the Annual Report on Form 10-K, the Quarterly Reports on Form 10- Q, or similar publicly filed documents

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

- Information to be discussed in the Company's quarterly earnings announcements, including the internal controls around these processes.
- Non-GAAP financial measures reported by the Company in its quarterly earnings announcements or publicly filed documents, including the internal controls around these processes.
- Significant or complex transactions not a normal part of the Company's operations.
- Any off-balance sheet structures.
- The Company's critical accounting policies and estimates and related disclosures in the Company's publicly filed documents.
- The chief executive officer and chief financial officer disclosure and certifications under Sections 302 and 906 of the Sarbanes-Oxley Act.
- Significant management judgments and accounting estimates.
- Significant changes in the Company's accounting policies or their application, or alternative GAAP treatments discussed with the independent auditor, including the reasons for changes made at the Company's discretion.
- Adjustments proposed by the independent auditors.
- The independent auditors' audit opinion, inclusive of critical audit matters ('CAMs'), their judgment on the quality of the Company's accounting policies and financial reporting, and other matters they are required to communicate to the Committee under applicable professional standards.
- Any fraud or other irregularity (whether or not material) that involves management or other partners who have a significant role in the Company's internal control environment.

55. With respect to internal controls over financial reporting, the Audit Committee Charter states that the Audit Committee shall:

Review management's assessment of the effectiveness of the Company's internal controls over financial reporting and the independent auditors' related attestation. Consider with management, internal audit, and the independent auditors whether any changes to such internal controls are appropriate, including the adequacy of the Company's internal controls. Discuss any material weakness or significant deficiency in the design or operation of internal control over financial reporting and the Company's remediation plan until resolution. Review any related significant findings and recommendations of the independent auditors and internal audit together with management's response.

56. With respect to risk oversight and risk management, the Audit Committee states that the Audit Committee shall:

Review periodically and discuss with management the Company's major and emerging risk exposures, including financial, operational, legal, and regulatory

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 13

**BADGLEY MULLINS TURNER** PLLC
19910 50th Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

risks, the steps the Company has taken to monitor and control such exposures, and the Company's risk management programs, policies, and procedures. The Committee may delegate review and oversight of specific risks, or categories of risks, to another committee of the Board, as appropriate. Regularly report to the Board the substance of such reviews and discussions.

57.     With respect to legal and ethical compliance, the Audit Committee Charter states that the Audit Committee shall:

> Review and discuss the overall adequacy and effectiveness of the Company's legal, regulatory, and ethics and compliance programs including the Company's Standards of Business Conduct, the Code of Ethics for the CEO, COO, CFO, and Finance Leaders, and the Policy for the Review and Approval of Related Person Transactions Required to be Disclosed in Proxy Statements. Review with management the Company's processes and systems to monitor compliance with these standards and applicable legal requirements.

## SUBSTANTIVE ALLEGATIONS

58.     Starbucks is a global coffeehouse chain based in Seattle, Washington.

59.     In late 2022, Starbucks announced the implementation of its Reinvention plan, a strategy designed to elevate the Company's brand globally, accelerate long-term growth, and enhance operating efficiencies.

60.     Throughout the Relevant Period, the Individual Defendants issued statements that were materially false and misleading and omitted to state material adverse facts necessary to make the statements not misleading because they failed to disclose that: (i) Company management lacked reliable information regarding revenue and growth projections; (ii) the Individual Defendants were understating risks related to seasonality in foreign markets, particularly in China; (iii)  the Reinvention plan failed to account for macro uncertainty and competition, especially in the Chinese market; (iv) as a result, the Reinvention plan failed to meet the Company's stated measures; and (v) as a result of the foregoing, positive statements regarding the Company's business, operations, and prospects were materially false and misleading and lacked a reasonable basis at all relevant times.

### The Individual Defendants' False and Misleading Statements

61.     On November 2, 2023, Starbucks issued a press release, announcing the

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 14

**BADGLEY MULLINS TURNER** PLLC
19910 50th Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

Company's financial results for its fiscal year 2023 (the "FY23 Release"). The FY23 Release reported the following results:

> Global comparable store sales increased 8%, driven by a 5% increase in average ticket and 3% increase in comparable transactions; North America and U.S. comparable store sales increased 9%, driven by a 6% increase in average ticket and 3% increase in comparable transactions; International comparable store sales increased 5%, driven by a 5% increase in comparable transactions; China comparable store sales increased 2%, driven by a 4% increase in comparable transactions and 2% decline in average ticket; Consolidated net revenues up 12%, to a record $36.0 billion, or 14%, excluding a 2% unfavorable impact from foreign currency translation…GAAP earnings per share of $3.58 grew 27% over prior year Non-GAAP earnings per share of $3.54 grew 20% over prior year.

62.    The FY23 Release quoted Defendant Narasimhan, highlighting the "positive impact" of the Reinvention plan:

> We finished our fourth quarter and full fiscal year strong, delivering on the higher end of our full-year guidance. Our Reinvention is moving ahead of schedule, fueling revenue growth, efficiency and margin expansion…Notably, we continue to see the positive impact of our Reinvention on our partner and customer experiences, proof points that we can continue to create, grow and strengthen our business while creating value for all. As we enter the current year, in the face of macro uncertainty, we remain confident in the momentum throughout our business and headroom globally. We expect sustained momentum throughout the company for years to come.

63.    The FY23 Release also quoted Defendant Ruggeri, who further touted the Company's "strong" performance, stating: "Our strong full fiscal year 2023 performance demonstrated our durable long-term growth and Reinvention plan execution…We are proud that our full fiscal year 2024 guidance will be grounded on a balance of both revenue growth and margin expansion."

64.    During an earnings call, hosted by the Company on the same day, Defendant Ruggeri provided the Company's 2024 fiscal guidance, stating:

> First, let me start with the foundation of our growth, comparable sales growth. We expect fiscal year 2024 global comp growth to be 5% to 7%…For color, our fiscal year 2024 U.S. comparable store sales are expected to grow in the range of 5% to 7% as our business continues to have substantial headroom spurred by our leading innovation and technology, increasing customer loyalty and strong digital

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 15

**BADGLEY MULLINS TURNER** PLLC
19910 50th Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

engagement as evidenced by the U.S. finishing fiscal year 2023 with strong performance of 9% comp growth. Another positive driver of our fiscal year 2024 5% to 7% global comp growth is the performance in China, with comp expected to be in the range of 4% to 6% in Q2 through Q4, with a higher comp in Q1 as we lap prior year mobility restrictions. Such growth is fueled by our increasing digital capability, coupled with the local opportunity we see stemming from our relevant product innovation and purpose-designed stores, which are resonating with customers and driving engagement…Next, in thinking of our global new store growth, we expect global new store growth of approximately 7%, with approximately 75% of the growth still coming from outside of the U.S. as we continue to focus on our strategic global expansion, reaching nearly 41,000 stores globally by the end of fiscal year 2024. Of the approximate 7% growth, we expect our U.S. store count to grow by approximately 4% in fiscal year 2024, driven by our dynamic portfolio format, expanding our white space opportunity.

65.    Also during the earnings call, in response to a question regarding "the competitive environment" in China, Defendant Narasimhan stated:

**Sara Harkavy Senatore**
**Bank of America – Analyst**
I had a question about China, please, which I think we've heard the competitive environment there very intense. And I was just curious if that was perhaps some of what we saw in terms of positive traffic, but perhaps a negative ticket, and then some of the investments you're making and perhaps that might be gating factors for margin expansion? The positive same-store sales, I think, certainly suggests that your business is executing well. But just trying to get a read on competitive intensity and maybe implications for new unit economics and the margin structure for the business going forward.

**Defendant Narasimhan**
Our brand in China is known as [Shing Baka] and it uplifts every day for millions of customers in China. And as Rachel said, our business is also strong, 5% comp in Q4. If you look at the first half of the year versus the second half of the year, the growth difference in the second half was 20% higher than the first. One thing you should know is that if you just look at the morning daypart, the morning daypart for our business in China now is higher than it was pre-COVID.

We have very strong local innovation. And to answer your question, if you look at the transactions that Rachel mentioned, we're very comfortable with the food and beverage transactions. And what we see there, including the price realization that we have, the ticket that you mentioned specifically points to merchandise and what we had in the store, which we are still working through. But we feel very good about the competitive position of beverages, the competitive position of food. We feel very good about the cash returns of the stores that we are opening. They're very strong. The team has done a wonderful job in ensuring that the cost of builds are low, with the productivity that we have been able to accomplish in our stores. We

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 16

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

feel good about the overall returns that we are getting there. And I'm heartened by the -- by how the business is coming together despite all the headwinds that have been there for the last couple of years.

66.    On January 25, 2024, Starbucks filed a proxy statement with the SEC (the "2024 Proxy"), soliciting shareholder approval for, *inter alia*, the re-election of Defendants Allison, Campion, Ford, Hobson, Knudstorp, Mohan, Nadella, Narasimhan, Servitje, Sievert, and Zhang to serve for another one-year term on the Company's Board and the compensation of certain of the Company's executive officers including Defendants Narasimhan and Ruggeri.

67.    Reporting the Company's fiscal year 2023 "Business Highlights," the 2024 Proxy stated the following:

In fiscal year 2023, Starbucks delivered strong performance across its global and growing portfolio. Brand strength and product innovation continue to resonate as demonstrated by our increasing loyal customer base. Starbucks also built on the execution of its long-term growth strategy with the announcement of the *Triple Shot Reinvention with Two Pumps Plan* on November 2, 2023.

68.    The 2024 Proxy further reported that "[o]perating margin expanded meaningfully in the back half of the year, driven by increased efficiency through our Reinvention Plan execution."

69.    With respect to the Company's risk oversight function, the 2024 Proxy stated:

The board has ultimate responsibility for risk oversight. We believe that a fundamental part of risk oversight is not only understanding the material risks a company faces and the steps management is taking to manage those risks, but also understanding what level of risk is appropriate for that company. The involvement of the board in reviewing Starbucks business strategy is an integral aspect of the board's assessment of management's tolerance for risk and its determination of what constitutes an appropriate level of risk for Starbucks.

While the full board has ultimate responsibility for risk oversight, the board has delegated oversight responsibility for certain risks to the Audit Committee, the Compensation Committee, the Impact Committee, and the Nominating/Governance Committee. This approach allows the board to draw upon the experience and judgment of specific directors comprising each committee who have experience overseeing and managing particular risks that Starbucks faces in various areas of its business. Starbucks ERM program is designed to identify, assess, and prioritize Starbucks critical risk exposures to its business operations across various time frames, from the short-term to the long-term, and throughout

the world. Risks are evaluated based on their potential magnitude, likelihood, and immediacy and are monitored over time to ensure risk profile changes are evaluated in a timely manner for existing and emergent risks.

The committees of the board play a key role in the board's risk oversight responsibility. Each of our board committees is authorized by its charter to consult at its discretion with any experts or advisors that committee members feel would be helpful. All committees receive regular reports from management responsible for monitoring and mitigating particular risk exposures as part of the ERM program, and the committee chairs provide regular reports to the full board on relevant areas of oversight.

The board believes that its leadership structure, coupled with the structure and work of the various committees described below, is appropriate and effective in facilitating board-level risk oversight.

70.    The statements identified above in the 2024 Proxy were materially false and misleading because, as detailed herein, the Reinvention plan was failing to meet the Company's stated measures due in part to its failure to account for macro uncertainty and competition in China. Further, despite the 2024 Proxy's descriptions of the Board's and its committees' oversight responsibilities with respect to internal controls over financial reporting, the Board and its committees were not adequately fulfilling these responsibilities and were causing or permitting the Company to issue false and misleading statements.

71.    On January 30, 2024, the Company announced its financial results for its first fiscal quarter of 2024 and reduced its 2024 fiscal guidance:

Our first quarter performance was strong on many measures. Of note was the unwavering commitment of our most loyal customers, the growth in rewards members, tender and spend per member . . . Despite headwinds, our brand is very strong, and that coupled with innovation and a relentless focus on our green apron partners form long-term differentiators, along with focused execution on Triple Shot Reinvention, will drive balanced and attractive earnings growth.

* * *

I am proud of the significant margin expansion and double-digit earnings growth we delivered in our first quarter, as it underscores our multiple paths to earnings growth. We are executing on several levers within those multiple paths to continue

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Ave. W., Suite 103
Lynnwood, WA 98036
**TEL** 206.621.6566
**FAX** 206.621.9686

delivering against our balanced growth model over the remainder of the year.

72.    During an earnings call, hosted by the Company on the same day, Defendant Narasimhan touted the "successful execution" of the Reinvention plan:

Let me walk you through the details. Our performance in the quarter was fundamentally strong. Our Q1 total company revenue was a record $9.4 billion, up 8% year-over-year. Our global comparable store sales grew 5% year-over-year, supported by a 5% comp growth in North America, driven by 4% ticket growth and 10% comp growth in China. Our global operating margins expanded by 130 basis points to 15.8% and our overall earnings per share grew 20% to $0.90. ***This speaks to the continued successful execution of our reinvention plan and the durable business we are building.***

* * *

We're focused on unlocking $3 billion in efficiencies, and I'm pleased to say that we're making steady progress. Our Triple Shot Reinvention efforts delivered 130 basis points of margin expansion in the first quarter of the fiscal year. As you heard me say often, the key to our success is the experience that our partners create for our customers. We're investing in a better experience for our partners to advance our business to a more balanced growth model as we unlock efficiency. ***In the quarter, we have seen the effectiveness of the Reinvention driven investments we have made in in-store operational efficiencies such as standards, equipment innovation and scheduling improvements, leading to a more stable environment for our partners.***

* * *

***We also saw great momentum in China.*** We aim to be the best in the premium market in China. Our brand equity across Starbucks and Starbucks Reserve is second to none. Based on our latest brand tracker, Starbucks continues to be the first choice in away-from-home coffee, including among the Gen Z consumers. We continue to lead in brand affinity and have a highest awareness, brand familiarity and purchase intent scores. We have the most outstanding partners in our stores with very strong customer connection and the highest retention rates in our industry. We offer distinctive global and locally relevant product innovation anchored on superior coffee with food attachments and a morning daypart that now have surpassed pre-COVID levels.

Our loyal customers, a major part of tender, are coming more often and our loyalty program is growing. We're doing all of this while offering premium physical and digital experiences delivered across our distinctive store portfolio across other physical channels and through our digital connection and doing so at a commensurate value. This ambition of being best in premium in China is in line with our long-term growth ambitions for China.

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 19

* * *

There are 3 key elements in our China strategy.

First, we are offering more coffee forward, locally relevant product innovations and we're increasing engagement in social media channels to influencers and partnerships, which are highly effective in China. These actions are increasing awareness and have led to greater customer frequency. Second, we have made significant investments in technology, increasing our omnichannel capability, allowing us to serve more customers through new occasions. These investments have also led to a more digitized store environment, increasing efficiency of our supply chain and stores while enhancing the partner experience and strengthening our unit economics in both existing and new stores.

Finally, we're increasing the percentage of new stores opening in lower tier markets and new county cities where we see meaningfully stronger new store economics. As you can see, we moved quickly to respond and implement a plan to address these unexpected headwinds. It will take time for these action plans to be fully realized. That said, we remain confident in our Triple Shot strategy and our long-term growth. So let me share some of the progress in the quarter.

Our first Triple Shot Reinvention priority is to elevate our brand by operating great stores and driving product innovation. The best lever for elevating our brand is our store experience. We continue to raise the bar on running great stores with a focus on enhancing both our partner and customer experience.[3]

### The Truth Emerges

73.    On April 30, 2024, Starbucks issued a press release, revealing disappointing financial results for the second fiscal quarter of 2024 and lowering the Company's 2024 fiscal guidance:

Global comparable store sales declined 4%, driven by a 6% decline in comparable transactions, partially offset by a 2% increase in average ticket; Consolidated net revenues declined 2%, to $8.6 billion, or a 1% decline on a constant currency basis; GAAP operating margin contracted 240 basis points year-over-year to 12.8%, primarily driven by deleverage, incremental investments in store partner wages and benefits, increased promotional activities, lapping the gain on the sale of Seattle's Best Coffee brand, as well as higher general and administrative costs primarily in support of Reinvention; GAAP earnings per share of $0.68 declined 14% over prior year; Non-GAAP earnings per share of $0.68 declined 8% over prior year, or

---

[3] All emphasis is added unless indicated otherwise.

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 20

declined 7% on a constant currency basis.

74.     Defendants Narasimhan and Ruggeri then issued statements regarding the difficulties faced by the Company. In pertinent part, Defendant Narasimhan stated:

> In a highly challenged environment, this quarter's results do not reflect the power of our brand, our capabilities or the opportunities ahead. It did not meet our expectations, but we understand the specific challenges and opportunities immediately in front of us. We have a clear plan to execute and the entire organization is mobilized around it. We are very confident in our long-term and know that our Triple Shot Reinvention with Two Pumps strategy will deliver on the limitless potential of this brand.

75.     Defendant Ruggeri added:

> While it was a difficult quarter, we learned from our own underperformance and sharpened our focus with a comprehensive roadmap of well thought out actions making the path forward clear. On this path, we remain committed to our disciplined approach to capital allocation as we navigate this complex and dynamic environment.

76.     During an earnings call, hosted by Starbucks on the same day, Defendant Ruggeri continued to highlight the Company's "challenging operating environment," stating:

> Still, we face a challenging operating environment. Headwinds discussed last quarter have continued. In a number of key markets, we continue to feel the impact of a more cautious consumer, particularly with our more occasional customer, and a deteriorating economic outlook has weighed on customer traffic, an impact felt broadly across the industry. In the U.S., severe weather impacted both our U.S. and total company comp by nearly 3% during the quarter. The remainder of our challenges were attributable to fewer visits from our more occasional customers.

> Turning elsewhere. We still see economic volatility in the Middle East, but we remain confident in the region's long-term growth opportunities. In China, we still see the effects of a slower-than-expected recovery, and we see fierce competition among value players in the market. But we are strengthening our premium position, and our team in China continues to execute with terrific rigor and heart as the market shakeout continues and as demand recovers and matures.

> None of these realities are excuses. Some, like weather, are transitory. Others, like a more cautious consumer, may persist longer, but much is within our control. There are 3 execution opportunities in our U.S. business I want to expand on: first, meet the demand we have across dayparts to drive future growth; second, launch even more exciting and relevant new products while maintaining our focus on core coffee forward offerings; and third, reach and demonstrate more value for our

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 21

**BADGLEY MULLINS TURNER** PLLC
19910 50th Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

occasional and non-Starbucks Rewards customers.

77.    During the earnings call, in response to a question regarding the Company's exit rates, Defendant Narasimhan stated:

**Sara Harkavy Senatore**
**Bank of America – Analyst**
The first is that you talked about weather as a headwind, and then you said that lavender latte in the quarter was one of the strongest launches you've had similar to PSL. But your exit rate -- it sounds like you're saying your exit rate was largely unchanged. So I'm trying to reconcile what would appear to have been headwinds that aren't reoccurring and then very successful innovation with the guidance and the exit rates.

**Defendant Narasimhan**
Let me address both of them by pointing to the underlying pressures that we see consumers face just in terms of what they have available to spend. So there's no question that if you take some of these transitory headwinds out, which, of course, are not an excuse in any way, and you look at the underlying headwinds particularly around the pressures that consumers face particularly with the occasional customer, what we're seeing is that's where the challenge is. It's a challenge with their traffic and it's their challenge with them coming into our stores

78.    On this news, the price of Starbucks stock declined more than 15% in one day, from a closing price of $88.49 per share on April 30, 2024 to a closing price of $74.44 per share on May 1, 2024.

79.    Analysts also reacted negatively to the news. For instance, on May 1, 2024, Deutsche Bank issued a report which stated, with respect to the Company's operations in China, that "China remains weak amidst a cautious consumer backdrop and increasing competitive intensity, and the trimmed unit growth guide likely adds to concerns on the growth outlook."

***Stock Repurchases During the Relevant Period***

80.    According to the Company's public filings, while the price of Company stock was artificially inflated due to the false and misleading statements detailed herein, the Individual Defendants caused the Company to repurchase approximately 8.9 million shares of its own stock, for a total of roughly $890 million, between October 30, 2023 and December 31, 2023.

81.    Given that the price of Starbucks stock was $74.44 after the corrective disclosures

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 22

**BADGLEY MULLINS TURNER** PLLC
19910 50th Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

on May 1, 2024, the true value of the 8.9 million repurchased shares was roughly $662.5 million. Accordingly, the Individual Defendants caused the Company to overpay by approximately $227.5 million to repurchase these shares.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

82. Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breach of fiduciary duties by the Individual Defendants.

83. Starbucks is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

84. Plaintiff is a current shareholder of Starbucks and was a continuous shareholder of the Company during the period of the Individual Defendants' wrongdoing alleged herein. Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

85. A pre-suit demand on the Board of Starbucks is futile and, therefore, excused. At the time this action was commenced, the ten-member Board was comprised of Defendants Allison, Campion, Ford, Hobson, Knudstorp, Mohan, Servitje, Sievert, and Zhang (the "Director Defendants"), along with Brian Niccol, who joined the Board after the Relevant Period and is not a party to this action. Accordingly, Plaintiff is only required to show that five Directors cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. As set forth below, at least nine of the Board's current members are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, including because they face a substantial likelihood of liability, and so demand on the Board to institute this action is not necessary because such a demand would have

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

been a futile act.

86.    The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

87.    Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

88.    Moreover, the Director Defendants willfully ignored, or recklessly failed to inform themselves of, the obvious problems with the Company's internal controls, practices, and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

89.    Defendant Narasimhan is not disinterested or independent and is therefore incapable of considering a demand. Defendant Narasimhan serves as the Company's CEO. Thus, the Company admits that Defendant Narasimhan is a non-independent director.

90.    Furthermore, Defendant Narasimhan is not disinterested or independent because he is named as a defendant, and faces significant personal liability, in the Securities Class Action based on substantially the same wrongdoing as alleged herein, specifically issuing materially false and misleading statements during the Relevant Period.

91.    Defendants Allison, Campion, Knudstorp and Zhang served on the Company's Audit Committee during the Relevant Period (the "Audit Defendants") and, pursuant to the Audit Committee Charter, were specifically charged with the responsibility to assist the Board in fulfilling its oversight responsibilities related to, *inter alia*, financial accounting and reporting,

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 24

the underlying internal controls and procedures over financial reporting, and the audits of the financial statements. At all relevant times, however, the Audit Defendants breached their fiduciary duty to the Company by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding the Company's business and the adequacy of its internal controls as alleged above. Therefore, the Audit Defendants cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihoods.

92.    The Director Defendants, as members of the Board, were and are subject to the Company's Code of Conduct. The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the Directors to also adhere to the Company's standards of business conduct. The Director Defendants violated the Code of Conduct because they knowingly or recklessly participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. Because the Director Defendants violated the Code of Conduct, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

93.    All of the Board's current members derive substantial revenue from the Company, control the Company, and are indebted to each other. These conflicts of interest have precluded the Board's current members from calling into question the Director Defendants' conduct. Specifically, none of the Board's current members have taken remedial action to redress the conduct alleged herein. For instance, none of the Director Defendants have sought to enforce the Company's Clawback Policy, which provides that "the Company may seek reimbursement with respect to incentive compensation paid or awarded to executive officers . . . in the event of a financial restatement or misconduct."

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Ave. W., Suite 103
Lynnwood, WA 98036
**TEL** 206.621.6566
**FAX** 206.621.9686

94.     The Director Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the directors can claim exculpation from their violations of duty pursuant to the Company's charter. As a majority of the directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein. They cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

95.     The acts complained of herein constitute violations of fiduciary duties owed by Starbucks' officers and directors, and these acts are incapable of ratification.

96.     The Individual Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds i.e., monies belonging to the stockholders of Starbucks. If there is a directors' and officers' liability insurance policy covering the Individual Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Individual Defendants, known as, inter alia, the "insured-versus-insured exclusion." As a result, if the Director Defendants were to sue themselves or certain officers of Starbucks, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

**BADGLEY MULLINS TURNER** PLLC
19910 50th Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

97.     If there is no directors' and officers' liability insurance, then the directors will not cause Starbucks to sue the Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event as well.

98.     Thus, for all of the reasons set forth above, at least nine of Starbucks' current directors are unable to consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## COUNT I

**Against the Individual Defendants for Violations of § 14(a)**
**of the Exchange Act, 15 U.S.C. § 78n(a) and Rule 14a-9 (17 C.F.R.§240.14a-9)**

99.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

100.    The Individual Defendants violated § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), and Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated thereunder by the SEC.

101.    The Individual Defendants, individually and in concert, disseminated and/or permitted the dissemination of materially false and misleading statements in the 2024 Proxy filed with the SEC. As alleged above, this filing contained materially false and misleading statements concerning the Company's Reinvention plan and its risk oversight function.

102.    The 2024 Proxy was used to solicit shareholder votes in connection with the election of Defendants Allison, Campion, Ford, Hobson, Knudstorp, Mohan, Nadella, Narasimhan, Servitje, Sievert, and Zhang to serve for another one-year term on the Company's Board.

103.    In addition, the 2024 Proxy was used to solicit the advisory vote to approve the compensation of, *inter alia*, Defendants Narasimhan and Ruggeri. While the shareholder vote was non-binding, the 2024 Proxy indicated that the "the board and the Compensation Committee will

**BADGLEY MULLINS TURNER** PLLC
19910 50th Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

review and consider the voting results when making future decisions regarding our executive compensation program."

104.    Describing the Company's "Compensation Philosophy," the 2024 Proxy indicated that executive compensation is performance based: "[t]he vast majority of pay for our executive officers is at-risk and performance-based."

105.    The materially false and misleading statements contained in the 2024 Proxy regarding the Company's Reinvention plan and its risk oversight function therefore misleadingly induced shareholders to vote in favor of the election of Defendants Allison, Campion, Ford, Hobson, Knudstorp, Mohan, Nadella, Narasimhan, Servitje, Sievert, and Zhang to serve for another one-year term on the Company's Board, and performance-based compensation to officers of Starbucks, including Defendants Narasimhan and Ruggeri, to which they were not entitled.

106.    The payment of unwarranted performance-based compensation to these Company executives was a waste of corporate assets.

### COUNT II

**Against the Individual Defendants for Violations of § 10(b)**
**of the Exchange Act, 15 U.S.C. § 78(j), and Rule 10b-5, 17 C.F.R. § 240.10b-5**

107.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein

108.    The Individual Defendants participated in a scheme with the purpose and effect of defrauding Starbucks. Not only is Starbucks now defending claims that it violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, but the Company itself is also one of the largest victims of the unlawful scheme perpetrated upon Starbucks by the Individual Defendants.

109.    During the Relevant Period, the Individual Defendants caused the Company to

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 28

**BADGLEY MULLINS TURNER** PLLC
19910 50th Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

overpay by approximately $227.5 million to repurchase roughly 8.9 million shares.

110. The Individual Defendants also individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct designed to falsify the Company's press releases, public statements, and periodic and current reports filed with the SEC.

111. The Individual Defendants employed devices, schemes, and artifices to defraud while in possession of adverse, material, non-public information and engaged in acts, practices and a course of conduct that included the making of, or participation in the making of, untrue and/or misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Starbucks not misleading.

112. The Individual Defendants, as directors and officers of the Company, are liable as direct participants in the wrongs complained of herein. Through their positions of control and authority as directors and officers of the Company, the Individual Defendants were able to and did control the conduct complained of herein and the content of the public statements disseminated by Starbucks.

113. The Individual Defendants acted with scienter during the Relevant Period, in that they either had actual knowledge of the scheme and the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them. The Individual Defendants were the top executives of the Company, or received direct briefings from them, and were therefore directly responsible for the scheme set forth herein and for the false and misleading statements and/or omissions disseminated to the public through filings with the SEC.

114. By virtue of the foregoing, the Individual Defendants have violated §10(b) of the

**BADGLEY MULLINS TURNER** PLLC
19910 50th Ave. W., Suite 103
Lynnwood, WA 98036
**TEL** 206.621.6566
**FAX** 206.621.9686

Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT III

### Against the Individual Defendants
### For Breach of Fiduciary Duty

115.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

116.    The Individual Defendants owed the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

117.    The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

118.    The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by failing to implement and monitor adequate internal controls over the Company's financial reporting and, as a consequence, issuing or permitting the issuance of materially false and misleading statements in the Company's SEC filings and other public disclosures. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

119.    As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

120.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

in the Securities Class Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

## COUNT IV

### Against the Individual Defendants for Aiding and Abetting Breach of Fiduciary Duty

121.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

122.    By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breach of their fiduciary duties.  In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

123.    Plaintiff, on behalf of Starbucks, has no adequate remedy at law.

## COUNT V

### Against the Individual Defendants For Unjust Enrichment

124.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

125.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Starbucks.

126.    The Individual Defendants either benefitted financially from the improper

**BADGLEY MULLINS TURNER** PLLC
19910 50th Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

conduct, or received bonuses, stock options, or similar compensation from Starbucks that were tied to the performance or artificially inflated valuation of Starbucks, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

127.    Plaintiff, as a shareholder and a representative of Starbucks, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

128.    Plaintiff, on behalf of Starbucks, has no adequate remedy at law.

## COUNT VI

### Against the Individual Defendants
### For Abuse of Control

129.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

130.    The Individual Defendants misconduct alleged herein constituted an abuse of their control over the Company, for which they are legally liable.

131.    As a direct and proximate cause of the Individual Defendants' abuse of control, the Company has sustained substantial damages.

132.    Plaintiff, on behalf of the Company, has no adequate remedy at law.

## COUNT VII

### Against the Individual Defendants
### For Waste of Corporate Assets

133.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

134.    The wrongful conduct alleged regarding the issuance of false and misleading

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Ave. W., Suite 103
Lynnwood, WA 98036
**TEL** 206.621.6566
**FAX** 206.621.9686

statements was continuous, connected, and on-going throughout the time period in issue.  It resulted in continuous, connected, and ongoing harm to the Company.

135.    As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (i) paying and colleting excessive compensation and bonuses; and (ii) incurring potentially millions of dollars of legal liability and/or legal costs, including defending the Company and its officers against the Securities Class Action.

136.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

137.    Plaintiff, on behalf Starbucks, has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.    Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual Defendants do not participate therein or benefit thereby;

B.    Directing all Individual Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds, and imposing a constructive trust thereon;

C.    Awarding punitive damages;

D.    Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.    Granting such other and further relief as the Court deems just and proper.

**BADGLEY MULLINS TURNER** PLLC
19910 50ᵗʰ Ave. W., Suite 103
Lynnwood, WA 98036
TEL 206.621.6566
FAX 206.621.9686

1

## JURY DEMAND

2

Plaintiff hereby demands a trial by jury.

3

4
DATED: December 2, 2024                     Respectfully submitted,

5
**BADGLEY MULLINS TURNER PLLC**
*/s/ Duncan C. Turner*
6
Duncan C. Turner, WSBA No. 20597
19910 50th Avenue W., Suite 103
7
Lynnwood, WA 98036
Tel: (206) 621-6566
8
Email: dturner@badgleymullins.com
***Local Counsel for Plaintiffs***
9

10
**RIGRODSKY LAW, P.A.**
Timothy J. MacFall *(pro hac vice forthcoming)*
Samir Aougab *(pro hac vice forthcoming)*
11
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
12
Tel: (516) 683-3516
Email: sdr@rl-legal.com
13
Email: tjm@rl-legal.com
Email: sa@rl-legal.com
14

15
**GRABAR LAW OFFICE**
Joshua H. Grabar *(pro hac vice forthcoming)*
16
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
17
Tel: 267-507-6085
Email: jgrabar@grabarlaw.com
18

19
***Attorneys for Plaintiffs***

20

21

22

23

24

25

26

27

28
VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT - 34